94

Howell, J., and Jones, Chief Judge, dissented.

Charles H. Burton, Washington, D. C., for plaintiff.

William A. Stern, II, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

This claim is presented under the War Contract Hardship Claims Act, known as the Lucas Act, 60 Stat. 902, as amended by 62 Stat. 869, 992, 41 U.S.C.A. § 106 note, to recover from the United States $65,510.52 as the net loss alleged to have been sustained by plaintiff in the performance of Government contracts between September 16, 1940 and August 14, 1945. The Government has moved for summary judgment on the ground that there is no genuine issue as to an essential preliminary requirement under the Lucas Act in that plaintiff did not file a proper written request for the type of relief contemplated by the Lucas Act with a department of defendant prior to August 14, 1945.

The facts alleged in the petition and contained in the documents submitted by the parties in relation to the present motion reveal that plaintiff, as a joint venturer with the John B. Schultz Contracting Co., Inc., entered into a contract with the War Department on July 14, 1942, for the grading, draining, and paving of Modification Center Number 5 at the Buffalo, New York, Airport. On July 30, 1942, the joint venturers also entered into a contract with the Civil Aeronautics Administration, acting on behalf of the Department of Commerce, for the clearing, grading, draining, and paving of an airport at Dunkirk, New York. The Buffalo Airport contract was completed by the joint venturers at a net profit. However, unusually heavy rains resulting in extensive delays were encountered during the execution of the Dunkirk contract. During this period of delay, the joint venturers were required to keep large quantities of their own expensive equipment on this project which could have been used to advantage on other contracts. Consequently, increased labor costs were incurred and severe losses were suffered from the inability to put the machinery to profitable uses, which resulted in the joint venturers completing the contract at a loss. In the performance of these two contracts, which were the only Government contracts entered into by the joint venturers during the period between September

16, 1940 and August 14, 1945, a net loss, as that term is used in the Lucas Act, of $99,153.20 was incurred. Under the joint-venture agreement between plaintiff and John B. Schultz Contracting Co., Inc., plaintiff's share of the profits and losses was 66.07 percent; hence, plaintiff's share of the total net loss on these contracts was $65,510.52.

On August 18, 1944, the joint venturers wrote to the Civil Aeronautics Administration a letter concerning the Dunkirk project, the pertinent parts of which letter read as follows:

"Attached herewith please find invoice and recapitulation sheets showing the labor loss and Equipment loss as compared with the time the equipment was on the job and the time it was actually able to work, the loss being due to conditions not contemplated in Contract No. Clca 1486 for construction of the Dunkirk Airport. * * *

* * * * * *

"In the execution of this Contract, we had in use equipment beyond what would be needed under normal conditions. The weather reports in your possession conclusively show that at no time during the execution of the Contract was there sufficient time between rains, to efficiently operate. Our proposal was predicated only on normal conditions, and there was no way for us to definitely know that we would experience continued wet weather.

"The Contract existing between us entered into the 30th day of July, 1942, stipulates in Article 4, on Page 3, that relief for losses can be obtained for 'unknown conditions of an unusual nature'. For this reason we feel that we should be recompensed for not only our cash losses but for losses due to the necessity of prolonging the job beyond the time stipulated in the Contract. * * *"

On November 9, 1944, the Civil Aeronautics Administration sent a reply denying the request on the ground that it presented a claim for damages which could not be settled by the contracting agency, but which rather had to be presented to the Comptroller General for consideration. The reply of the Civil Aeronautics Administration contained the following statement with respect to the nature of the claim:

"In accordance with the Act of April 10, 1928, Title 31, Section 236 of the U. S. Code, the Comptroller General of the United States is authorized to submit the amount of any claim, which contains such elements of legal liability or equity as to be deserving of the consideration of the Congress, and request authorization for an appropriation to cover the sums favorably recommended by him. * * *"

Following the passage of the Lucas Act, plaintiff, on February 5, 1947, again presented a claim to the Civil Aeronautics Administration, on its own behalf only, relying on the above-quoted letter of August 18, 1944, as constituting a request for relief from losses under the First War Powers Act, 50 U.S.C.A.Appendix, § 601 et seq. On December 24, 1948, this claim was denied in its entirety by the Civil Aeronautics Administration on the ground that there was no evidence that plaintiff had filed a written request for an amendment of its contract, without consideration, under the First War Powers Act. Thereafter, on June 24, 1949, and within six months after the Civil Aeronautics Administration's refusal to grant Lucas Act relief, plaintiff filed this action.

The Government has moved for summary judgment on the ground that the request for relief on August 18, 1944, which is relied upon by plaintiff, does not satisfy the requirements of the Lucas Act because, instead of asking for extra-legal relief without consideration under the First War Powers Act, it requests relief under Article 4 of plaintiff's contract. It is plaintiff's position, however, that the request was sufficient to put the Civil Aeronautics Administration on notice that extra-legal relief was being requested.

Section 1 of the Lucas Act provides in part, as follows:

"Where work, supplies, or services have been furnished between Septem-

ber 16, 1940, and August 14, 1945, under a contract or subcontract, for any department or agency of the Government which prior to the latter date was authorized to enter into contracts and amendments or modifications of contracts under section 201 of the First War Powers Act, 1941 (50 U.S. C., Supp. IV, app., sec. 611), such departments and agencies are hereby authorized, in accordance with regulations to be prescribed by the President * * * to consider, adjust, and settle equitable claims of contractors, * * * for losses (not including diminution of anticipated profits) incurred between September 16, 1940, and August 14, 1945, without fault or negligence on their part in the performance of such contracts or subcontracts. * * *"

Section 3 of the Lucas Act sets forth the following requirements for claims presented thereunder:

"Claims for losses * * * shall be limited to losses with respect to which a written request for relief was filed with such department or agency on or before August 14, 1945, * * *."

The Supreme Court of the United States in Fogarty v. United States, 340 U.S. 8, 13, 71 S.Ct. 5, 8, 95 L.Ed. 10, also considered the nature of the written request required by Section 3, and concluded that:

" * * * no particular form of notice is required. But whatever the form of notice, it must be sufficient to apprise the agency that it was being asked to grant extra-legal relief under the First War Powers Act for losses sustained in the performance of war contracts."

We see no suggestion in the plaintiff's letter that it was asking for extra-legal relief. It is urged that, because certain decisions of this court, e. g., Arundel Corporation v. United States, 103 Ct.Cl. 688, have interpreted Article 4 of the standard Government contract, providing for an equitable adjustment when "unknown conditions of an unusual nature" are encoun-

tered, as not being applicable to adverse weather conditions, the Government's officers, in considering the plaintiff's letter, should have disregarded its assertion of contract rights, and treated it as a prayer for grace, since that was the only avenue of relief. Such a treatment of the request would be in the face of the Supreme Court's interpretation of Section 3 of the Lucas Act.

The Government's motion for summary judgment is granted, and the plaintiff's petition is dismissed.

It is so ordered.

WHITAKER and LITTLETON, Judges, concur.

HOWELL, Judge (dissenting).

On the basis of the documents and pleadings before the court, I am of the opinion that defendant's motion for summary judgment should be denied.

The majority holds that plaintiff's letter of August 18, 1944, contains no suggestion that plaintiff was asking for extra-legal relief. Presumably the majority has reference to the fourth paragraph of plaintiff's letter which calls the contracting agency's attention to Article 4 of its contract dealing with equitable adjustments for excess costs occasioned by unknown conditions of an unusual nature. This "assertion of contract rights" is said to bar plaintiff's suit under the Lucas Act as interpreted by the Supreme Court in the Fogarty decision. I do not believe that under the Fogarty decision any particular form of notice by a claimant under the Lucas Act is required so long as the notice is sufficient to apprise the agency that it was being asked to grant extra-legal relief under the First War Powers Act for losses sustained in the performance of its war contract. In my opinion the letter of August 18, 1944, was sufficient when read as a whole, to apprise the Civil Aeronautics Administration that it was being asked to grant extra-legal relief. I say this because I believe that a contracting agency, such as the CAA, was sufficiently familiar with the standard form of government contract to know that delays

caused by adverse weather are specifically stated by that contract to be justification only for an extension of the performance time and are not, either by the terms of the contract or the decisions of the courts, a reason for granting the equitable adjustment in price sought by plaintiff. The contracting agency's reply to plaintiff's claim suggests that insofar as plaintiff claimed it was required by the government to keep its idle equipment on the job during bad weather, the claim was one for breach of contract which that agency had no power to consider; and that insofar as the claim was merely a request for additional compensation for losses occasioned by delays due to adverse weather, the claim was an equitable one which might be favorably considered by the Comptroller General and Congress. This reply indicates clearly that the agency was aware that the nature of the claim was at least in part extra-legal despite plaintiff's reference to Article 4 of the contract.

We have had occasion in other cases to consider the nature and sufficiency of requests for relief under the Lucas Act. In Simpson v. United States, D.C., 102 F.Supp. 562, we concluded that the documents containing the alleged requests for extra-legal relief must be considered as a whole, and that regardless of the manner in which plaintiffs characterized their claims it was the nature of the claim embodied in the request for relief that determined whether or not the resulting loss was cognizable under the terms of the Lucas Act. Thus, I believe that the Simpson decision has already disposed of the gist of defendant's contention that plaintiff's characterization of his claim as legal or equitable is determinative of whether or not the requirements of the Lucas Act have been met. In that case plaintiff concluded its "request for relief" document with a prayer for equitable relief. In the body of the claim, however, plaintiff not only mentioned specifically Articles 3 (Changes) and 4 (Changed Conditions) of the contract as bases for relief, but the facts alleged supported claims of a nature properly cognizable under those Articles. In passing on plaintiff's claims, the contracting officer treated them as contract claims and granted plaintiffs the monetary relief requested to the extent that the facts underlying the claims were established.

In the Fogarty case, the Circuit Court of Appeals, 8 Cir., 176 F.2d 599, held that the claims embodied in the requests for relief relied upon, were claims for which, if established, the United States was liable at law to the plaintiff bankrupt, and for the recovery of which the bankrupt was entitled to maintain an action at law against the United States. The Court further commented at page 603 of 176 F.2d:

"And they were so treated when finally adjudicated in the bankruptcy court. They are not 'equitable' claims within the meaning of the Act."

Before the Supreme Court, plaintiff in the Fogarty case attacked the holding of the Circuit Court on the ground that the Lucas Act contained no definition of the term "request for relief." In affirming the Circuit Court decision, the Supreme Court conceded that the Act contained no definition of the term, but held that whatever the form of notice, it must be *sufficient* to apprise the agency that it was being asked to grant extra-legal relief.

Keeping in mind the precise facts and contentions upon which the courts passed in the Fogarty case, I assume that Lucas Act relief was not intended to be available to contractors whose claims would, if established, find their solution within the framework of their contracts; that it does not afford a procedure whereby a claimant can waive the contract and sue for grace. Thus, as in the Simpson case, where a contractor's claim was founded upon facts and circumstances which, if established, would have entitled that contractor to relief under the terms of its contract, the claim was held not cognizable under the Lucas Act. I do not believe that the mere fact that the contractor might not have been able to establish his right to contractual relief in whole or in part to the satisfaction of the contracting agency would transform his claim into an equitable one cognizable under the Act. On the other hand, as here, if the facts

underlying the contractor's claim would *not*, if established, entitle him to relief under his contract, then I believe such a contractor may well have a cause of action under the Lucas Act regardless of the terminology used in asserting his claim or the precise form of notice used to acquaint the contracting agency with his complaint. As we said in McKenzie v. United States, 119 Ct.Cl. 435, the request for relief need not mention the First War Powers Act specifically. Furthermore, I do not think a contractor forfeits his right to seek relief under the Lucas Act merely because he may, intentionally, or through ignorance, have attempted to persuade his contracting agency that he was entitled to the relief sought by virtue of the terms of his contract, provided the claim was *clearly* beyond the scope of the particular contract. Conversely, a contractor cannot bring himself within the orbit of the Lucas Act merely by showing that he has asked for relief as a matter of grace, if his claim is in fact one clearly arising under his contract. If Section 201 of the First War Powers Act had created in contractors a right to the relief authorized, we might hold that the notice of claim would have to specifically request equitable or First War Powers Act relief. Since that Act did not confer such a right, and no procedure whatever was available to contractors to secure consideration of their situations in the light of Section 201, I do not see how we can require more of a contractor than that he put the agency on notice in some manner, of circumstances which might move that agency to exercise its discretion to confer the gratuity authorized by the Act.

Contractors do not always make their written complaints to contracting officers with a lawyer at their elbows. The usual contracting officer, on the other hand, is not only familiar with the standard form of government contract, but has available, at no expense to himself, the services of attorneys in his agency who are experts in interpreting the meaning of that contract's various provisions. I can conceive of a contractor who has suffered monetary losses through long delays due to unusually bad weather, believing that Article 4 would cover his situation. I believe that the contracting agency in question would know at once that such losses were not compensable under the contract and that the only manner in which monetary relief could be afforded the contractor would be under the discretionary powers conferred on war agencies by the First War Powers Act. If the agency did not choose to grant such equitable relief, I do not think the contractor should be barred from relief under the Lucas Act merely because he mistakenly supposed that his contract covered his situation.

Unless we judge these "requests for relief" on the basis of the actual nature of the claims presented, I think the results will be unfortunate both for claimants and for the Government. If a claimant's characterization of his claim as contractual or equitable is to control, then a contractor who had a perfectly good contract claim but who waited too long under the terms of his contract to present it as such, may qualify for relief under the Lucas Act if, when he ultimately asked for help, he couched his request in language of grace rather than right. Other contractors, who made claims without reference to their contracts, and whose claims were nevertheless properly considered by the agency as contractual and denied because not established on the facts, could rely on such claims for relief under the Lucas Act.

In the instant case, the establishment of the sufficiency of the request for relief was a preliminary step to the proof of the merits of plaintiff's Lucas Act claim. Inasmuch as neither of the parties saw fit to present all of the pertinent documents (including the contract) to the court for consideration, I do not think it is possible for us to decide that there is not a genuine issue as to a material fact relating to the merits of plaintiff's claim. Assets Service Corporation v. United States, 121 Ct.Cl. ——. On the documents before us, I believe there is sufficient doubt to justify a trial on the merits.

JONES, Chief Judge, concurs in the foregoing dissent.